(41 South. 318.)

No. 15,802.

DAVIS v. QUEEN CITY FURNITURE MFG. CO., Limited.

(April 23, 1906.    Rehearing Denied June 4, 1906.)

1. MASTER AND SERVANT—INJURY TO SERVANT —ACTION FOR DAMAGES—PLEADING.
    There was a cause of action and in consequence an exception on the ground was properly overruled.

On the Merits.
2. SAME—DEFECTIVE APPLIANCE—EVIDENCE.
    Whilst it is true that corporations following dangerous occupations assume certain primary obligations to secure the safety of their employés, on the other hand, a plaintiff to re-

cover must prove that needful appliances were wanting and due to that fact an accident was the result.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 895, 900.]

**3. SAME—"INEXPERIENCE."**

The weight of the testimony does not sustain that plaintiff was green and inexperienced.

**4. SAME—INSTRUCTION.**

The preponderance of the testimony shows that plaintiff was warned against dangers incident to the occupation.

**5. SAME—EVIDENCE—ADJUSTABLE SPRINGS.**

There were no adjustable springs on the machine fed by plaintiff. A number of witnesses testified that there is no necessity for such "springs." Some of the witnesses were employés of other factories than that of defendant. Plaintiff must make out his case with reasonable certainty.

The court holds that plaintiff has not made out his case with required certainty.

**6. SAME—PIECE OF WOOD.**

The plaintiff was feeding the machine with small pieces of wood. One of these pieces was brought up with the record. The court holds that the preponderance of evidence sustains the defense.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by W. L. Davis against the Queen City Furniture Manufacturing Company, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

Murff & Webb, for appellant. Thatcher & Welsh, for appellee.

BREAUX, C. J. Plaintiff sues defendant to recover a judgment in the sum of $10,000 damages.

He was one of defendant's workmen to do such work as the foreman might point out. He was put to work on a machine commonly called the groove saw, to groove or saw "case posts," to be used in making the furniture of which defendant was a manufacturer.

The pieces of wood with which plaintiff was feeding the machine at the time, were about two inches square; in length, about three feet. On the table of the machine there were two saws about an inch apart. One of the outer rims of these saws was about an inch above the surface of the table, and the other about five eighths of an inch.

On the outer edge of the machine, known sometimes as a "combination machine," as well as by the name of "groove machine," there was a stationary iron brace to enable the workman feeding the machine to work the pieces through at uniform distance from the saws.

Plaintiff avers that on the side opposite to the stationary brace there was another adjustable brace which served as a brace to hold the piece worked through against the stationary brace of the saws. That the adjustable brace would gently yield under pressure; but it none the less held fast to the piece and prevented it from kicking back or shooting backward.

At this point there is material difference between the testimony of plaintiff's witnesses and those of the defendant. The former have testified, in substance, as just stated, while the latter all said as witnesses that the adjustable brace was not a safety device; that this brace was not part of the machine; that it was attached to the machine to enable the workman to obtain the desired uniformity in sawing or grooving the pieces.

We will consider this point of difference later in the discussion of the issues.

Returning to a description of the machine, it had a sawboard which was fitted in, flush with the table, which formed part of the machine, and through this board there were slits through which the saws protruded.

The table itself, on which the machine rested, was 4½ feet in length, and three feet wide.

One of the contentions of plaintiff is that the sawboard was worn out and unfit for use.

While the plaintiff was at work, the piece of wood he was running through the machine

was hurled back over the saws, struck his hand, he says, and caused it to fall on the saws which dragged it through the board in question, and cut his entire hand off.

Plaintiff, in his petition, sets forth his complaints at some length. His complaints may be briefly stated: defendant was negligent in not warning him of the danger; the sawboard was defective; the adjustable brace was not on the machine; he had not been directed to put it on.

Defendant interposed an exception of no cause of action which was overruled by the judge of the district court. Defendant presses this exception upon our consideration.

Defendant's answer to plaintiff's complaints was a general denial, contributory negligence, experience of plaintiff, the machine was simple, no warning was needed, the sawboard was in good condition, the adjustable springs were not part of the machine, these springs were not necessary for the convenience or safety of workmen, and, lastly, defendant urges that plaintiff lost his hand by dropping the timber on the saw and in attempting to catch it his hand was caught.

We take up for decision the exception of no cause of action before referred to. While it is true, as contended by defendant, that special allegations in the petition will control allegations that are general, it does not seem to us here that the special allegation should be controlling for the following reasons: the contention of defendant is that the defects complained of, if defects they were, were open and apparent; that the plaintiff saw that there was no adjustable brace on the machine; whether he knew there should be one or not he knew that none was there.

Furthermore, if it were true, as alleged by plaintiff, that the sawboard was split and worn be (plaintiff) saw that it was so, and that he, thereby, is precluded from claiming any damages for injury.

Now the petition alleges just the contrary.

In considering the exception of no cause of action, we take the facts as alleged.

Plaintiff alleges that he did not know that the adjustable brace which was not on the machine belonged thereon, and that he did not know that the sawboard was split and worn.

We will not infer that plaintiff had knowledge of the defect which defendant says he had when he alleges that it was not known to him.

Furthermore, we will not assume that an ordinary workman who was receiving one and a half dollars a day, whilst others more skilled were receiving two and a half and three dollars a day, had superior knowledge of defects to the employer. The plaintiff sufficiently presented his case. The asserted special allegation was not controlling as it was not a direct special allegation contrary to the general allegations.

We pass to the merits.

The machine was dangerous, is the first proposition which plaintiff presents for discussion.

Several of the witnesses testified that all machines are dangerous. They said, however, that a combination machine when used, as was done in this case, as a "grooving machine" was not as dangerous as others in woodwork factory, such as the shaper, jointer, tenant machine and ripsaw.

Young men leave their quiet home on the farm on which they have been reared in order to follow the more active work of the factory.

The dangers on the quiet farm are infinitesimal in comparison to those of some factories. It emphasizes the necessity of being careful and attentive; but the necessity should be felt both by the employer as well as by all men employed.

In the next place plaintiff's averment is that he did not have sufficient experience in

factory work to justify defendant in placing him at work on the grooving machine.

We must say that plaintiff was not as inexperienced as he thought he was. He had worked in different wood working plants. First, in a small sawmill, afterwards in a box factory. While working for the defendant before he met with the accident of which he complains he had worked on other machines considered dangerous, as well as at the grooving machine which grooved pieces of timber for locks. True, while he was not to be considered a regular machine man he certainly had sufficient experience not to be considered an entirely green and inexperienced man.

There was nothing unreasonable or improper in giving him work for which he applied.

We pass to the insufficiency of the instruction of which plaintiff complains.

He avers that he was not instructed in all the details needful in operating the grooving machine. He was certainly given some instructions, and if defendant's foreman is to be believed at all these instructions were as complete as it was reasonable for him to expect.

There is contradiction here as there is upon several other points. The foreman testifies at some length and says that he was particularly careful; while plaintiff testifies that the foreman was not near as particular as he states.

We think that everything touching needful instruction or warning narrows itself down to whether the foreman should have instructed the plaintiff about the adjustable brace or spring.

This brings us to one of the important issues of the case, and to which we have given earnest thought; that is, whether the adjustable brace or spring afforded protection from accident.

If it was a protection, a safety device, as plaintiff claims, it was then a decided omission on the part of the foreman not to rig up the machine with this safety device. In view of the fact that plaintiff was not at all skillful, it would have been prudent, if there was the least necessity for it, to put on the device. On the other hand, if it was not a protection and a safety device, as contended by defendant, then there was not the least negligence on the part of defendant in omitting all mention of it during the time that plaintiff was being instructed by the foreman and in not attaching it to the machine.

Before taking up that issue for decision, we will pass upon other points of perhaps less importance.

The alleged defectiveness of the sawboard requires attention. It will be recalled that the metal table on which the saws rested has a recess in which the sawboard was placed. The sawboard itself is made of wood.

The complaint is upon that point that the sawboard was considerably worn, and that in consequence there was too much open space between the saws and between the saws and the metal table.

Plaintiff avers that his attention was not called to this by the foreman, and although these boards did not fit around the saws, he was not aware of the fact.

Because of the defectiveness of this sawboard, and the total want of the adjustable brace the contention is urged that the piece of timber kicked back with force and was the cause of the accident.

We take up in the first place plaintiff's complaint touching the sawboard. Here again the testimony is conflicting. The plaintiff and his witnesses testify most positively that the sawboard was out of order and unfit for use, and that it was negligent not to have changed it. A large number of witnesses for defendant are equally as positive that the sawboard was all that was required. Two of

the witnesses testify that in succession after the accident, on the day that it occurred, they took up the work that plaintiff had on hand at the machine and worked off the pieces, and that the machine worked very well for a number of hours, until they were entirely through with the work.

Whether in all these contradictions it is plaintiff's witnesses who have violated the ninth commandment or if it be the defendant's witnesses, only the Supreme Judge can decide with absolute certainty.

We are not certain that the sawboard was all that it should have been. At the same time in order to hold for plaintiff on this point it would be necessary to make it appear in what respect it was the cause of the accident.

We recur to the subject before referred to: the adjustable brace.

There was no adjustable brace on the machine. It was not part of the machine as originally made up. It was a device provided at the factory by the workmen themselves. As to the extent of the protection it afforded, the testimony of the witnesses does not agree. The witnesses for plaintiff testify that it was a safety device, while the witnesses for defendant express a decided contrary view. According to the latter there was very little safety about it.

That it was not a part of the machine originally makes no great difference, it seems to us; as to that matter the push stick which plaintiff was instructed to use in pushing the pieces through the machine was not a part of the machine, and yet its use was deemed necessary.

While it is true that the preponderance of the oral testimony is the other way, we are inclined to the view that it had some usefulness. It certainly enabled the workmen to accomplish better work.

When operated by a thoroughly experienced machinist it is quite probable that even the

push stick could have been laid aside, and the adjustable brace also; and for all we know, perhaps the sawboard itself, although a very important part of the machine. But in the hands of a man not thoroughly trained in the work there was some danger even with all the appliances on hand and in place.

We may as well state here that defendant lays great stress upon the fact that plaintiff, as testified to by three witnesses, said immediately after the accident, in substance, that the accident was all due to his own negligence. We do not attach the very greatest importance to this statement. Plaintiff had several times requested the foreman to place him in charge of a higher class machine, where, though more dangerous, he would receive higher wages. It is probable that his mind had been bent upon this change. While suffering excruciating pain, it is highly creditable to him that he said that he, not his employer, was at fault. We infer that he himself did not know precisely how it happened. The shock and the torture were enough to cause him to forget some of the incidents of the accident.

But there is a subsequent feature in this matter; the reverse of creditable to plaintiff; that is, provided defendant's witnesses have testified truthfully in that regard. They said positively that plaintiff stated that he had been negligent.

We leave the subject and take up the last cause of contention; that is, whether the stick of wood which was brought up with the record was the piece on which plaintiff was working at the time that he was hurt.

If it was then we are of opinion that he cannot possibly recover damages.

The preponderance of testimony shows that it was handed to the foreman while he was near the grooving machine and where there were other similar pieces. The other pieces had been shaped and grooved as this was, with the only difference that the one before

us has marks of the saw on which it apparently fell. It has blood stains on it or marks.

After this stick had been handed to the foreman it was handed to the superintendent who put it away and on the trial it was produced and offered in evidence. "It was admitted," the court held, "for the purpose of proving the size of case post and for that alone."

Touching the stick, we insert the following here: When the general manager was asked where was the piece of timber, his reply was that it was handed to him by the foreman about 15 feet from the machine, about five or ten minutes after Davis was hurt; and the foreman testified in turn that a boy picked it up and handed it over to him, and that he took it and turned it over to Yeager, the superintendent.

Defendant's theory is that the stick fell out of plaintiff's hands as he was taking it back in order to place it at the left of the machine where the other sticks were. That it slipped from his hand, and that it was then that the accident happened; that plaintiff must have placed his hand upon the saws.

It devolved upon plaintiff to make out his demand. If the testimony for defendant is not false and inspired by deep laid deceit and downright fraud, subtly conceived and executed, plaintiff has not, by any means succeeded in making his demand reasonably certain.

We have not found it possible to satisfy ourselves, in view of the evidence, that plaintiff did not drop the stick on the saws as the marks thereon show.

It is reasonable to infer, we think, that this stick was in the hands of plaintiff at the time.

For reasons assigned, the judgment is affirmed.

NICHOLLS, J., absent.